Good morning. Good morning. May it please the court. My name is Palmer Huvestal. I'm an attorney from Palina, Montana. I'm appearing on behalf of Richard Saari, the appellant, and it's a pleasure to see the court again. I'd like to use eight minutes and then reserve two, and I'm going to talk about the restitution issue this morning. As an initial matter, I think that it is pretty clear under the relevant statutory law and the case law that there has to be proximate cause between the offense conduct, the conduct of the defendant, and the restitution that's being claimed by the victim. It's clear there's got to be proximate direct causation. And the problem in this case is that the district court, there was no evidence, the district court found that, but there was no evidence of direct causation between the offense of conviction, which is the receipt of two sexually explicit images, and the psychological damage that was caused to this victim's mother, for which she was claiming reimbursement in the amount of about $20,000. The only evidence before the court at the time was that, well, she had a prior history of trauma. She was undergoing certain psychological counseling. She was taking some antidepressants. But this was all from a history of prior trauma, and that set forth. But there's a fair amount of evidence that the conduct of this defendant increased the trauma. Pardon me? There's a fair amount of evidence that the conduct by this defendant increased the trauma. Well, I think that the district court says that his, or said that his conduct exacerbated her preexisting condition. That's another way of saying what I just tried to say. Right. Yeah. But the only evidence to support that was a letter that was attached to the government sentencing memorandum from this woman's counselor. And that basically said, this crime added another significant layer of questions of self-worth. Right. So why is that not evidence at the PSR stage? Because we don't know what it is. We don't know what. But it's common sense. Speaking only for myself, you've got a decent argument as to proportion of causation, but you do not have an argument as to causation for any causation. Speak only for myself. Sure. That's kind of the area that I was going to go to next. I mean, it's clear under Golan, under Paroline, under those cases that there's got to be some apportionment. There's got to be some disaggregation between. And how do you deal with the Supreme Court Paroline case and our Golan case, where in both of those cases it's apportionment as among wrongdoers. Here it's apportionment as between a wrongdoer and other, at least as far as we can tell, you know, conduct just happened in life. It was not attributable for the wrongdoing. Well, I think that there was some prior conduct from some three or four other men in the state of Indiana. That's set forth in, I think, paragraph 74 of the pre-sentence report. And essentially there is this similar conduct between these other men that was engaged. I think it's to say not involved in the same sort of, not involved in the same crime. The others, it's all arising out of the same sort of distribution of photos. Here it's separate wrongdoers, if I want to say that way. Sure, sure. So I think at a minimum there should have been more evidence that had been presented. I think that the court should have engaged in some sort of attempt to apportion this $20,000 of restitution that had been claimed by this woman. What was the argument made to the court in terms of apportionment or trying to meet this Paroline case? Well, the argument simply was the conclusory statement that there's got to be some sort of apportionment between Mr. Sari's liability for these restitution amounts and the other damage. And that's the only argument made? Essentially, yes, because the government had the burden of proving those restitution amounts. It was the government's burden of proof under 3664, I think, to prove that. And there was only one sentence, I think, that was made by the district court, and that was simply that his conduct exacerbated her injury. It's like the eggshell plaintiff situation, basically. Right. That's exactly what it was. She came to the court in this condition and it exacerbated. But I think for purpose of the apportionment, I mean, the only argument we made was there's got to be some kind of apportionment and it hasn't been presented, and it's the government's burden of proof. In the context of restitution, is there a collateral source rule? The reason I'm asking that is that the amount sought here is not for the full amount of the cost of the treatment. And if there's a collateral source rule, you may get apportionment but as to a much larger amount because apparently the $20,000 is only based upon the deductibles. It seems that under the case Follett, it seems to me, and if my recollection of the collateral source rule is correct, under Follett that was cited in the case law, if there is some means by which the restitution can be paid by other sources, then that's not a charge that goes to the defendant. Well, here's the collateral source rule to which I'm referring. just ordinary tort suit. If the victim has purchased insurance that compensates, the defendant nevertheless owes the full amount, the idea being that the plaintiff paid for the insurance and is entitled to the proceeds, but the defendant is not entitled to a deduction based upon the proceeds from the insurance policy. Now, health care policy may be insurance in that sense, and so I'm asking if the collateral source rule that I just described applies, that means that your client is entitled to apportionment of the full cost of the treatment, not merely to apportionment of the deductible. That's where the question goes. Yes. And I think the answer is yes. The collateral source rule does apply. Yeah. That's the wrong answer. That's the wrong answer from your client's point of view. Well, I mean, it might be the right answer, but it's not probably the one your client would like. Okay, well, I'm going back to the Follett case. And in Follett, there was a woman who was a Native American, and she was receiving treatment from the Indian Health Service. And the court, this court, found that it wasn't an item of damage that could be attributable to the defendant. And so I guess. I guess what you're saying is no, you wouldn't import the collateral. You don't like that rule, at least as applied here. Okay. That would be your best position. That's not an issue I research. My advice would be to take their advice. Okay, I'll take your advice. And now as to whether you look at the future earning power, is it your position that the Eighth Circuit had it wrong, that you could look to future power, or just that in this case, there's really not enough there, given his prior indigency, that he had such any kind of realistic future power? Well, I think certainly that the court can look at the Eighth Circuit cases. But, again, there was a one-sentence finding, and that was essentially that he's young and he has a history of employment. If we go back and look at the pre-sentence report, we can see that his history of employment, I think his last employment was in 2014. The employment prior to that was in 2010. And so it wasn't quite as, as I stated in the brief, stellar as the district court, I think, would have argued. And so he's clearly non-indigent. You're saying that it's really a clearly erroneous supposition as to the future earning power. Yeah, I think it's too speculative. I don't know that it's necessarily clearly erroneous, but it's probably the standard. But in terms of the rule that we would apply, the judge is allowed to look at future earnings for purposes of determining indigency? Yes. Okay. Okay. You might want to save your remaining time. All right. Thank you. Good morning. May it please the Court, my name is Cindy Peterson. I'm an assistant U.S. attorney for the District of Montana, and I represent the United States today. I will start by where we just ended, which is the $5,000 special assessment. We've pointed out in our briefs that this court has not issued a published decision giving guidance in terms of how to determine indigence. But the Kelly decision in the Eighth Circuit provides very good guidance, and we would urge the court to follow that guidance as the district court did in this particular case. The district court here made the PSR part of the record and then relied on it throughout the sentencing as it was handing down the judgment. And what's important here is to look at, of course, the court's findings of facts as they relate to Mr. Sorry. Because when you do, I don't believe that there's any showing that they were illogical or implausible, which is what's required for clear error. Specifically, the PSR identifies that Mr. Sorry is 33 years old. He had attended some college. It went back through his employment history. It found that he was a good worker. At one point in time, he was earning $19 an hour. He was in good physical health. There was no issues at all with his ability to work. While he was not employed at times, it was largely because he quit or he wasn't following the rules, when you look at the factors that are put under that. It wasn't because he couldn't work or was not a good employee from that standpoint.  What about this confusion about whether the PSR actually said he was not indigent, and that being a premise for then imposing? I don't believe that the PSR said that he was not indigent, Your Honor. It didn't. That's correct. The confusion is whether the district court somehow thought it did the way he read the wording. And so that would be really a factual misapprehension in which he would say, well, he's not indigent. And that's really the issue on appeal, it seems, or part of it. I think that, Your Honor, that the PSR does not have to make that specific finding because it comes down to whether or not the court wanted to make the specific finding, and, more importantly, whether or not the facts that the court found were clearly erroneous. And largely what the court was saying here was that Mr. Sari was able-bodied, and he had the ability to work, and he had the ability to pay this in the future. And certainly there are other factors in the PSR that supported that, even when he's not working, that he was able to purchase many things, and that's throughout the entire PSR. In 2015, when he committed these crimes, he wasn't employed in terms of looking at his employment status, yet he was buying phones, he was buying cigarettes, he was buying alcohol and marijuana for the victims, he was meeting at hotels, he was giving the victims money, he was paying for their pictures. At one time he paid for sex. He had a laptop, he had a large-screen plasma TV, he had a cell phone, he had a digital camera. All of these things showing that Mr. Sari clearly has money and clearly has the ability to make money in the future. And so based on everything that was in the PSR, we don't believe that the court clearly erred as to the determining of indigence. If there's no other questions on that, I'll move to restitution. Again, the issue on restitution is whether or not the district court clearly erred when it made its factual findings, whether or not the factual findings were illogical or implausible. Can I just start with sort of a basic premise question, and that is, do you agree that some apportionment is required under the Supreme Court case law and ours? I do not, Your Honor. So I'd like to start with that. Yes, I will, Your Honor. So first of all, we have two different issues, and I referenced one of them in our brief, which was disaggregation, which is required under the Galen case. And we don't believe that has any application to Mr. Sari because Galen stood for the clear proposition that courts are required to look at a simple possessor versus the original abuser. And here, Mr. Sari was the original abuser. So there's no issue with regards to disaggregation as it relates to Mr. Sari's conduct and the original abuse conduct. But that does lead us to another issue which was brought up, which is this apportionment concept and whether or not the court is considered or required to apportion. The reason that we believe the answer is no is twofold. First of all, the court is only required to find that Mr. Sari was a substantial factor in the losses. And once he finds that Mr. Sari is a substantial factor, then, in fact, they have determined that he is responsible for approximate causation. With regards to that, there was a reference to the eggshell victim, and that is significant because it doesn't, to the extent that this victim may have been impacted more than another victim that did not have preexisting conditions, that doesn't matter. What matters is the fact that Mr. Sari was found to be a substantial cause or he was the approximate causation of her damages. But this one's tricky. I mean, the eggshell, we all know the eggshell plaintiff. Prior to the eggshell plaintiff being hit in the head, that plaintiff's walking around happy, not receiving any form of treatment, gets hit and because of being hit is now damaged. That's not the case here. As this woman walks around, she's already suffered harm. She's already receiving treatment. She's now harmed further. And if I take the evidence that comes in, I'm perfectly willing to take it in, because of the additional harm, she's going to require more treatment than she otherwise would have rather than moving from no treatment to treatment. So the question is, does she get the restitution for the additional treatment that's necessitated by the wrongdoing, or does she get compensation for the entirety of the treatment, including the treatment she otherwise would have been getting anyway? So that's not quite an eggshell head example. And we would argue the latter, Your Honor. I know you would, but how do you get there? Because of Doe, it specifically says if he's a substantial factor, then this defendant is on the hook, so to speak, for her entire losses. Now, the large portion of why we're arguing it is because if you consider how the court would do this, we're really sort of creating a recipe for many trials within these sentencings where we're making victims. We're not doing it. I'm reading Paroline, and Justice Kennedy's opinion is very clear that this is going to be a tough one. I think it would be a tough one, and, frankly, I think that's supported by the record at ER 66, which is the counselor's letter that was referenced, specifically that trauma has this compounding effect, and it's referenced the difficulties of untangling. I think that it would be near impossible for the court to try to figure out, you know. But that's exactly the task that Justice Kennedy's opinion gives us, where we have several tort feasers or several wrongdoers with respect to child porn, and we've got to sort it out there. So you're just saying it's an impossible task here, and, therefore, we can't do it. But it's the same impossible task. I understand what you're saying, Your Honor, and I see the difficulties, and I recognize the difficulties even with doing it with the original abuser, the requirements of Galen and Paroline at the same time, too. Counsel, could you answer a question for me to help me understand your argument? How is it that the appellant here can be viewed as a substantial factor as to all the damages? He might have been a substantial factor as to the exacerbation part, but how is he a substantial factor in the preexisting damage? So I think that that comes down to a factual finding by the court, and in this case the court largely relied on, A, the letter that's at ER 66, but also there is a victim statement that is set forth at PSR paragraph 95, where that also shows that the mother suffered severely because of the defendant's conduct. So I think that the court's factual findings in this case were supported by those two things. The other thing is that the case law clearly says that sorry does not have to be the sole cause. We just have to present the evidence to show that there is a causal chain between the conduct and the loss. And when you look at what the court found, based largely at the letter at ER 66, coupled with the evidence that was in the PSR, then we believe that we met that burden. Could I ask you on that point, how do you link up your standard, which is we just have to show that there's a causal chain with the Supreme Court allocation language? The apportionment argument, that's where I think that it becomes difficult in what I was trying to reference, and not eloquently, about I just don't understand how the court could possibly separate these two things out without putting a victim's mental health and without putting the victim through a trial in terms of trying to determine that. That's why I don't think that you get to that step when it comes down to cases like this one that's before the court, where sorry was the original abuser, there was a substantial, he was a substantial factor in the losses that were incurred, and therefore the court's findings just weren't illogical or implausible in terms of determining that he was owed. I also think that it's important to note that where the court awarded, the court awarded the $20,800, which was, it was inclusive of historic, it was inclusive of some prescriptions, and then it also had about $15,000 in future counseling. And the court specifically identified that that was substantially less than what was awarded in Laney, which was $60,000 over six years, and it also noted that this is only the co-pay that was requested. So when you look at the express language of 2259, the court is not to consider whether or not there's any other insurance or any other third-party payer with regards to payment of this potential. So this is your answer to the collateral source rule question? That's correct, Your Honor. So in other words, even if we had apportionment, it's apportionment of a much larger amount? Did you make that argument to the court? I don't believe that we discussed apportionment, Your Honor. We discussed it as it related to not requiring disaggregation under Galen. Yes. So it may be that if you go back and we say there really must be apportionment, you may be arguing for apportionment based on a much larger amount? Well, I think that I know that I would have argued the language of 2259 and that you don't consider third-party payers. We definitely discussed that and that you don't. And that's not part of the appeal in front of us, I realize, because I'm just figuring out what might or might not happen as it goes back. Yeah, there was discussed the insurance and the fact that she was only seeking co-pays, and I'm over my time. Thank you. Thank you, Your Honors. Very briefly, as to the first issue, it was clear error. Well, the second issue, the JVTA issue, it was clear error because the district judge speculated that in the future, he would not be indigent when he's not incarcerated. I think that's why it was clear error, because he speculated as to what would happen in the future. But he has to make some judgment on that, right? Sure, but, I mean, he will have been incarcerated for – I think his release date is 2025. He will be, at that point, 41 years old, which is relatively young. But we don't know what his health is. We don't know what his ability to remain employed is. I think it's just too speculative. But under your view of the law, the judge is entitled to look to future earning possibility for determining indigency in this context. Well, based upon the record. I'm not asking you the record question. I'm asking you a legal question. Under your view of the law, the judge is entitled to look to future earning possibility in determining indigency rather than confined to the current state of his assets. Yes. Thank you. And as to the second question. You've exceeded your time now. Thank you. The case just argued of United States v. Surrey is submitted. We thank you both for coming over from Montana.
judges: McKeown, W. Fletcher, Gould